Jimmy Floyd SEWELL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19284.

United States Court of Appeals
Eighth Circuit.

Feb. 24, 1969.

Henry J. Osterloh, Little Rock, Ark., for appellant.

Robert F. Fussell, Asst. U. S. Atty., Little Rock, Ark., for appellee; W. H. Dillahunty, U. S. Atty., with him on the brief.

Before GIBSON and LAY, Circuit Judges and HARPER, Chief District Judge.

FLOYD R. GIBSON, Circuit Judge.

Jimmy Floyd Sewell was jointly indicted but separately tried and convicted by a jury of a violation of the Dyer Act, 18 U.S.C. § 2312. Sewell's companions in the offense pleaded guilty to the identical charge, were sentenced, and testified at Sewell's trial.

On appeal Sewell contends: (1) his arrest was invalid because the arresting officer lacked probable cause to make the arrest, and (2) the instructions given by the District Court on aiding and abetting in the commission of a crime, and on possession and, in particular possession of recently stolen property, were erroneous and amounted to reversible error.

Defendant Sewell and his co-indictees, Nancy LaForme and Elmer Cockrill, in early January 1968 while in Houston, Texas, discussed among themselves and with John Henry Dixon and a person named Richard the fact that they all needed jobs. Sewell volunteered that if they could find a way to get to West Virginia they could all obtain work at a certain company. Cockrill offered the use of a credit card if they could procure a car. Cockrill and Richard then left the group and stole a 1967 black Pontiac GTO. After stealing the car, Cockrill and Richard picked up Dixon and La-Forme and then went around the block to pick up Sewell. Cockrill testified that

Sewell was unaware the car was stolen and that he told Sewell the car belonged to his brother who was in the army. Richard at that point was driving the car and after driving it to his home in Houston, Texas, Richard informed the group that he had changed his mind and was not going to West Virginia. Cockrill then drove the group in the car to Corrigan, Texas, where they spent the night at Cockrill's grandparents' home.

The group left Cockrill's grandparents' home early the next morning. After stopping for gas in Corrigan, Sewell started driving and drove until they stopped at another filling station. Dixon then told Sewell that they needed to change license plates because the service station attendant was writing the license number down when they used the credit card. Cockrill started driving again and as they approached the town of Nacogdoches, Texas, Dixon was let out of the car for the purpose of stealing some other license plates. This he did, while the others cruised around the block. After proceeding down the freeway some distance they drove off on to a side road where Sewell, according to the testimony of Dixon and LaForme, put one of the license plates on the front of the car and Cockrill and Dixon put the other license plate on the back. Cockrill testified that Sewell did not participate in attaching the license plates.

The group then proceeded to Texarkana, Texas, where they sold a spare tire to a service attendant for $10. That evening as they were passing through Forrest City, Arkansas, it was snowing and the road was icy. Cockrill, who was driving at this time, started to pass a truck, lost control and slid into a ditch. The group then caught a ride to a DX service station, where they had difficulty securing a wrecker because they could not produce identification. After some stalling, one of the attendants and Cockrill left the service station for the scene of the accident, which was about 15 miles east of Forrest City. Shortly after they arrived at the scene, a state trooper stopped by, checked the motor identifica-

tion number on the car and accompanied them back to the DX service station. The state trooper then asked Sewell, La-Forme, Cockrill and Dixon to whom the car belonged. Sewell stated he did not know; the others apparently failed to reply and the state trooper placed all of them under arrest. Sewell did not testify at the trial.

Defendant's first contention is that his arrest was made without probable cause and, therefore, the indictment against him should be dismissed. This contention was first asserted by the defendant in the midst of the trial, when the state trooper was testifying to the circumstances of the arrest. The motion was overruled without discussion or comment.

■■ Sewell's first contention fails for two reasons. (1) In Arkansas an arrest may be made if the officer has reasonable grounds to believe that the person arrested has committed a felony. Ark.Stat.Ann., Title 43, Chapter 4, Sec. 43–403 (1947). Sewell and the others in the group were unable to provide identification for themselves or for the wrecked vehicle. The state trooper who had been assigned to investigate a case near Blackfish, Arkansas, pertaining to a 1967 Pontiac car, proceeded to the scene of the accident and checked the motor number of the vehicle, indicating he had reason to believe the car might be stolen. Then after proceeding to the DX filling station and failing to obtain any information from the occupants of the car as to whom the car belonged, the state trooper certainly had probable cause to believe that the car was stolen.

■■ (2). The objection to the arrest was not timely made and any objection defendant Sewell might have had to the jurisdiction of the Court over his person was waived. Under Rule 12(b) (2), Fed.R.Crim.P., a motion challenging the validity of the indictment must be made before trial.[1] This rule serves the salutary purpose of preventing unnecessary trials and deterring the interruption of a trial on the merits for any objection relating to the institution and presentation of the charge.

Rule 12 does state: "Lack of jurisdiction * * * shall be noticed by the court at any time * * *." This refers, however, to lack of jurisdiction over the subject matter and not the person. Pon v. United States, 168 F.2d 373, 374 (1 Cir. 1948).

■ This precise issue has also been decided in this Circuit, adversely to the defendant's contention, by Bistram v. United States, 253 F.2d 610 (8 Cir. 1958). Judge Matthes, after pointing out the requirements of Rule 12(b) (2), Fed.R.Crim.P. for raising defenses and objections based upon defects in the institution of the prosecution or in the indictment by motion before trial, cited with approval Pon and then added at 612 of 253 F.2d:

> "For an equally cogent reason, appellant's contention must be disallowed. It has long been a firmly entrenched principle of federal jurisprudence that if the accused is personally before a court having jurisdiction of the subject matter, that court has jurisdiction over the accused regardless of how he was brought into the presence of the Court." (Numerous citations omitted).

and then cited a quotation from Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952) holding:

> " 'This Court has never departed from the rule announced in Ker v.

1. Rule 12(b) (2) reads:
   "Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant.

Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding."

Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a "forcible abduction." No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.' "

Accord, Evans v. United States, 325 F.2d 596 (8 Cir. 1963), cert. denied 382 U.S. 881, 86 S.Ct. 170, 15 L.Ed.2d 121.[2]

■ The trial court gave the usual instructions (Nos. 8.06 and 8.07) on aiding and abetting others in a commission of a crime as set forth in Mathes & Devitt, Federal Jury Practice and Instructions, pp. 90–92 (1965). These instructions have been approved many times. See cases listed, *ibid.* Contrary to defendant's contention these instructions do not require a lesser quantum of proof than is ordinarily required in a Dyer Act case.

■ Also, defendant's contention that the use of Instruction 8.06 relating to aiding and abetting and captioned "Multiple Defendants" was improper because only one defendant was being tried, is misconceived. The instruction given did relate to the facts of the case and the heading of the instruction objected to by the defendant, "Multiple Defendants", was not even read to the jury in the Court's charge.

■ The defendant also attacks the Court's general instruction on possession and control of the stolen vehicle. On this point the trial court correctly stated the law.[3]

2. We should note before passing on to the next point that defendant has not cited any cases or reasons for his assertion that if the arrest were invalid the proper remedy should be the dismissal of the indictment. We mention this as we do not desire to give recognition to any such asserted principle of law. Even if a police officer erred and made an improper arrest, that fact of itself should not clothe the arrested person with immunity from prosecution. The exclusionary rule long followed in the federal courts originally set forth in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and extended in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), relates to the exclusion of evidence obtained in an illegal or unconstitutional manner. The sanction of exclusion is applied in an attempt to encourage and compel proper and constitutional police activity, but the sanction does not go so far as to shield an accused from prosecution. There are available remedies for false arrest in addition to the sanction applied on the use of evidence.

In this case there can be no question raised about the fruits of an alleged illegal arrest as no evidence was seized at the time of the arrest. Defendant's conviction resulted from the testimony of his accomplices plus, of course, the physical fact of his traveling and having driven the stolen automobile in its interstate journey.

3. The Court's instruction on possession read as follows:

"The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it.

"A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

"The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

"If the jury should find beyond a reasonable doubt from the evidence in the case that the accused, either alone or jointly with others, had actual or

Defendant's next objection relates to the instruction on possession of recently stolen property and the inference that may be drawn from possession and transportation of such stolen property.[4]

Defendant attempts to equate the decision in Barfield v. United States, 229 F.2d 936 (5 Cir. 1956), condemning an instruction stating possession of recently stolen property raises a *presumption* of guilty knowledge, with the instructions given in the case at bar which expressly stated possession may give rise to an *inference* that the person in possession knew the property had been stolen. It is difficult to comprehend defendant's obection on this point as *Barfield* expressly held that the instruction should be phrased so that possession does not require a presumption, but rather, merely permits an inference of guilty knowledge to be drawn. Defendant asserts without citing any authority that an inference and a presumption are so similar that the jurors are not intelligent enough to distinguish between them. We are unimpressed by this argument and as noted in 1 Jones, The Law of Evidence, §§ 9–10, pp. 16–20 (5th ed. 1958), there is a clear difference in meaning. Presumption indicates that a conclusion must be drawn from a certain factual disclosure until the conclusion is rebutted by some evidence. An inference indicates that the jury may or may not infer a conclusion from a given factual situation. Black, Law Dictionary, pp. 917–918 (4th ed. 1951) points out,

"A 'presumption' and an 'inference' are not the same thing, a presumption being a deduction which the law requires a trier of facts to make, an inference being a deduction which the trier may or may not make, according to his own conclusions; a presumption is mandatory, an inference, permissible." (Citations omitted.)

The instruction given on possession of recently stolen property was proper. Aron v. United States, 382 F.2d 965 (8 Cir. 1967); Minor v. United States, 375 F.2d 170 (8 Cir. 1967), cert. denied 389 U.S. 882, 88 S.Ct. 131, 19 L.Ed.2d 177; Gregory v. United States, 364 F.2d 210 (10 Cir. 1966), cert. denied 385 U.S. 962, 87 S.Ct. 405, 17 L.Ed.2d 307.

Defendant lastly raises the point that even if the instructions were correct, he was not in possession of the stolen automobile at the time of his arrest. That fact is immaterial if he had been in possession of the stolen automobile when in Arkansas. The defendant and his companions were in possession at

---

constructive possession of the two-door hardtop, 1967 Pontiac, GTO, described in the indictment, then you may find that such was in the possession of the accused, within the meaning of the word 'possession' as used in these instructions.

"An act or a failure to act is knowingly done if done voluntarily and intentionally, and not because of mistake or accident or some other innocent reason."

4. The Court's instruction read as follows:
"Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

"And possession in one state of property recently stolen in another state, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession not only knew it to be stolen property but also transported it, or caused it to be transported, in interstate commerce.

"It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits the jury to draw from possession of recently stolen property. If any possession the accused may have had of recently stolen property is consistent with innocence, the jury should acquit the accused."

the time of the accident in Arkansas and still attempted to exercise dominion over the vehicle by having it removed from the ditch so they could if possible, continue their travel. See Minor v. United States, *supra,* and Harding v. United States, 337 F.2d 254 (8 Cir. 1964). This element of the offense was properly submitted to the jury and was for the jury's determination.

We have carefully considered the entire charge of the experienced trial judge, the Honorable Gordon E. Young, and find that the Court carefully and fully charged the jury on the law applicable to the facts of this case and that the defendant received a fair trial.

Judgment affirmed.