**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Elmer CECIL, Defendant-Appellant.**

**No. 71–1407.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1972.

Decided April 5, 1972.

J. Patrick Green, Omaha, Neb., for defendant-appellant. .

William K. Schaphorst, U. S. Atty., Omaha, Neb., Richard A. Dier, U. S. Atty. D. Neb., for plaintiff-appellee.

Before BREITENSTEIN,* HEANEY and STEPHENSON, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Defendant-appellant Cecil was indicted, and found guilty by a jury, on the charge of possessing a short-barrel shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871. He was sentenced under the Youth Corrections Act and now appeals.

At about 5:00 P.M. on August 22, 1970, a group of local and federal officers went to an Omaha, Nebraska, address for the purpose of serving arrest warrants on Duane Peak and Edward Poindexter, who had been charged with murder in state proceedings. At the time the premises were known to the Omaha police as the headquarters of the National Committee to Combat Fascism, a successor or affiliate of the Black Panthers organization.

There was a porch across the front of the building. The officers approached the premises with the expectation of opposition. Several officers went on the porch. Captain Hartford knocked on the screen door. Defendant appeared at the door. Hartford told him that they were police officers and had the mentioned warrants. He said they wanted to come in and asked if the parties were there. Defendant said, "You're not coming in," and dropped the catch in the lock. Lieutenant Perry shouted that defendant had a gun. Hartford pulled the screen door open, breaking the lock, and the officers entered in a rush. The gun was seized and defendant was arrested. The testimony on the location of the gun is not in agreement. One officer said that defendant held the gun in his left hand and was leaning it against a wall. A federal agent testified that defendant put the gun against the wall with his left hand and that the gun appeared to be a sawed-off shotgun. The gun had been altered to reduce its length below the statutory minimum and was not registered as required by 26 U.S.C. Chap. 53.

---

* Of the Tenth Circuit, sitting by designation.

Cecil was handcuffed and the officers then proceeded to search the house without finding those charged in the warrants. The search, subsequent to the seizure of the gun and the defendant's arrest, is not pertinent here and we say no more in that regard than that we disapprove of the manner in which it was conducted.

█ The trial court, relying on the plain-sight rule, denied a defense motion to suppress the use of the gun in evidence. Objects in the plain view of an officer who has the right to be in the position to have that view are subject to seizure and may be used in evidence. Root v. Gauper, 8 Cir., 438 F.2d 361, 363. The gun with which we are concerned was in plain sight. The question is whether the officers had the right to be where they could see it.

█ Defendant says that the officers had no right to be on the porch because the warrants they were attempting to serve were not supported by constitutionally sufficient complaints, and, hence, were invalid. Regardless of the validity of the warrants, which were valid on their faces, we believe the police were entitled to go on the porch and knock on the door. Ellison v. United States, 93 U.S.App.D.C. 1, 206 F.2d 476, 478. The porch and its approach had no warning signs and were open for use by tradesmen and others. The officers approached openly and in daylight. They were there to arrest those named in the apparently valid arrest warrants, not to seize the gun and arrest the defendant. They had probable cause to believe that at least one of the suspects was at the premises. Their intent was not to make a warrantless arrest or search, and there is no evidence that they knew the warrants were invalid and used them as a pretense to gain entry to the premises. Under these circumstances, we agree with the trial court's finding that the officers' entry on the porch and knocking on the door were lawful. Cf. Davis v. United States, 9 Cir., 327 F.2d 301, 303.

The observation of the gun was an independent and intervening factor unrelated to the legality of the warrants. Having observed the gun, the officers' reaction was reasonable. The premises were known to be the headquarters of a militant organization, and had been fortified for protection in the event of violence. Two individuals sought in connection with the slaying of an officer several days earlier were thought to be within. In the circumstances presented, the entry and the seizure of the gun were reasonably necessary and proper to prevent any untoward incident and "to neutralize the threat of physical harm." Terry v. Ohio, 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889.

Defendant argues that nonregistration is an essential ingredient of the offense of possession of a sawed-off shotgun and that without knowledge of nonregistration the officers could not lawfully seize the gun and arrest the defendant. The argument is specious. Without knowing the serial number of the gun the officers could not check registration, and without measuring it they could not determine its length. Two officers testified that the gun appeared to be a sawed-off shotgun. Subsequent investigation revealed that the gun was within the class defined by 26 U.S.C. § 5845(a) and was not registered.

█ The observation of the gun gave probable cause for the reasonable belief that a crime, the possession of a contraband firearm, was being committed in the presence of the officers. Cf. United States v. Briddle, 8 Cir., 436 F.2d 4, 6–7, cert. denied, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 24. We know of no rule which requires an officer to have knowledge of all the elements of the crime when he views an article which reasonably appears to be contraband. A requirement that an officer must know the fact of nonregistration before seizing a contraband firearm would stultify the enforcement of the National Firearms Act. We are convinced that the trial court properly denied the motion to sup-

press and properly received the gun in evidence.

In a state trial against others, defendant Cecil testified in support of a defense motion to suppress the use of evidence seized in the episode which concerned his arrest. After hearing such testimony, and the supporting foundation, the trial court ruled that the testimony was given voluntarily by Cecil in an effort to help his friends in the state prosecution and admitted portions thereof in evidence. Defendant says that he was not warned of his rights and that the testimony is inadmissible under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. Cecil was called to testify because he said that he would do so. The unchallenged evidence is that he was subpoenaed only to protect his job.

■■ Miranda is not applicable because there is no suggestion of custodial interrogation. Massiah is not in point because the evidence was not obtained by, or with the cooperation of, state or federal authorities. Statements by a party made voluntarily on the witness stand in a judicial proceeding, if adverse to his interest, are admissible evidence against him in a subsequent criminal prosecution. Hale v. United States, 10 Cir., 406 F.2d 476, 478–479, and cases there cited, cert. denied, 395 U.S. 977, 89 S.Ct. 2129, 23 L.Ed.2d 765. We agree with the trial court that Cecil's statements were voluntary and were admissible against him.

■ Defendant objected to the instructions on possession. These are substantially the same as those approved in Sewell v. United States, 8 Cir., 406 F.2d 1289, 1293, n. 3. The trial court correctly stated the law. There was evidence that on the day of the appearance of the officers defendant was in charge of the premises and at the time of appearance had the gun in his hand. This is enough to sustain the verdict.

Affirmed.

HEANEY, Circuit Judge (dissenting).

I respectfully dissent.

I agree that the police were within their rights in going to the house, in knocking at the door, in breaking down the door, and in seizing the defendant and the shotgun. It would be unreasonable to expect the police to risk their lives when faced with an armed person who they have reason to believe may be hostile, under all the circumstances present in this case.

On the other hand, I fail to understand why a temporary seizure of the defendant and the weapon would not have sufficiently protected the officers. One of the approximately twenty law enforcement officers participating in the search could easily have detained the defendant during the search. In this time, the police could have inquired of the proper authorities to learn whether the gun was registered, or they could have requested the defendant to provide proof of registration as required by 26 U.S.C. § 5841(e). Unless these inquiries gave them probable cause to arrest Cecil, the officers should have released him upon completion of the search.

Instead, the police handcuffed the defendant and used him as a human shield to protect them as they searched the house, on the theory that if any occupants of the house fired on the police, "Cecil would take the brunt of it." He was then taken to police headquarters on charges of being in possession of an unregistered, sawed-off shotgun.

I cannot accept the majority's conclusion that the police have probable cause to arrest anyone found in possession of a sawed-off shotgun in the absence of probable cause to believe it is unregistered. Cf., United States v. Bonds, 422 F.2d 660 (8th Cir. 1970). To my knowledge, there are no cases which have decided this precise point. It may be that probable cause for such an arrest could be established in most communities by showing either that there were no sawed-off shotguns registered in a com-

munity, or if there were such guns registered, that they were in the hands of gun collectors and others known to the police, and by showing further that the police were aware of these facts. On the basis of this record, therefore, I do not think that the police had reasonable cause for believing that the defendant had violated any law. While Congress might be well advised to make the registered *or* unregistered possession of such weapons a violation of federal law, it has not done so; and neither we, by judicial fiat, nor the police, by their arrest policies, can amend the law to accomplish that result.

Requiring proof of probable cause to believe a gun is unregistered will not impose an impossible burden on the authorities who desire to enforce the existing law as written. The number of sawed-off shotguns legally registered to private individuals is small indeed,[1] and the police can be kept advised of those guns legally registered in their locality.

1. Less than 15,000 sawed-off shotguns are registered in the entire United States, most of which are registered to governmental agencies for training purposes or to residents of Western states.