UNITED STATES of America,
Appellee,

v.

Katherine BUCKHANON, Appellant.

No. 74-1213.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1974.

Decided Nov. 13, 1974.

Victor Sherman, Nasatir, Sherman & Hirsch, Beverly Hills, Cal., for appellant.

Joseph Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before LAY, ROSS and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

After a jury trial Katherine Buckhanon was convicted of two counts of possession with intent to distribute a controlled substance (heroin) in violation of 21 U.S.C. § 841(a)(1). She appeals alleging numerous errors by the court below. We affirm the conviction and judgment of the district court.

The facts disclosed at trial are as follows: On May 20, 1973, Arthur Buckhanon, the defendant's husband, and a young woman named Adele Holmes flew from Los Angeles to Minneapolis and sold eleven ounces of heroin to a government informant in a hotel room. This transaction was monitored electronically by federal narcotics agents, who recovered the heroin from the informant, Cornelius Clark. This incident was the basis of counts one and two, which charged Katherine with possession and with a sale of a controlled substance.

At the instigation of federal agents Clark began immediately to negotiate with Arthur for delivery to Minneapolis of an even larger quantity of the drug. These negotiations continued by telephone between Los Angeles and Minneapolis, culminating on May 23, 1973,

when Arthur again arrived at the Minneapolis airport accompanied by a young woman, Cheryl Sneed. This time the agents did not wait for a sale and arrested both Arthur and Mrs. Sneed at the airport. In searching their luggage the agents found 29 ounces of heroin in Mrs. Sneed's suitcase. This incident underlies count three, which charged Katherine with possession on May 23.

The fourth count charged Katherine with conspiracy to violate section 841(a)(1) between April 24, 1973, and May 24, 1973.

The government's theory in charging Mrs. Buckhanon with these violations was that she was the source of the heroin carried to Minnesota by Arthur. Various witnesses testified for the government and their testimony tended to show that Katherine obtained narcotic drugs through a contact in Mexico and that she had given Arthur the heroin which was subsequently found in his possession in Minneapolis. The government claimed that Katherine thereby aided and abetted Arthur in his illegal possession in Minnesota and charged her as a principal under 18 U.S.C. § 2(a).

The defense attempted to show during the trial that Katherine and Arthur had experienced marital difficulties during the relevant time period and that they were estranged, so that they had no contact with one another. Witnesses testified for the defense that Katherine had not seen Arthur, so that she could not have given him any heroin. The defense also adduced evidence tending to show that another individual, government witness John Sneed, was the source of the drugs.

1. *Suppression of evidence seized in search at airport.*

Mrs. Buckhanon contends that the district judge erred in not suppressing the heroin evidence which was seized pursuant to a search of Cheryl Sneed's suitcase by federal agents on May 23. It is argued that the agents had no probable cause to arrest Mrs. Sneed.

Arthur and Mrs. Sneed were arrested shortly after their arrival at the Minneapolis airport on May 23. Knowing that Arthur was negotiating with Clark, the informant, to deliver a sizable quantity of heroin to Minneapolis, federal agents had surveilled Arthur in Los Angeles and observed him board a flight for Minneapolis accompanied by the young woman who turned out to be Mrs. Sneed. In Minneapolis government agents observed Arthur and Mrs. Sneed get off the airplane and go to the baggage area of the airport. After retrieving her suitcase, Mrs. Sneed approached Arthur and tapped him on the shoulder. As they started to leave the baggage area Arthur was arrested. Mrs. Sneed observed the arrest and had made a move as if to leave the area when she, too, was placed under arrest.

The agents took the luggage from Arthur and Mrs. Sneed and took both of them and the luggage to an airport security office. Arthur was searched, as were his bags. When no heroin was discovered, Mrs. Sneed's suitcase was opened and the drug was found therein.

■ It is clear that there was probable cause to arrest Cheryl Sneed under the rule recently reiterated by this Court in United States v. Peep, 490 F.2d 903, 906–907 (8th Cir. 1974).

We assess probable cause in terms of the eyes of a reasonably cautious and prudent peace officer in the circumstances of the moment. . . . Probable cause to arrest depends "upon whether, at the moment the arrest was made, * * * the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). . . . And in making this assessment we do not isolate for independent analysis each factual circumstance, but rather we view

the action of the arresting officers on the basis of the cumulative effect of such facts in the totality of the circumstances. . . . (Citations omitted.)

*See also,* Theriault v. United States, 401 F.2d 79, 81 (8th Cir. 1968), cert. denied, 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969).

In the instant case the arresting officers had knowledge of such facts and circumstances as would warrant a prudent man in believing that Mrs. Sneed was committing the offense of possessing heroin with intent to distribute. They knew that Arthur had been accompanied by a young woman (Adele Holmes) when he sold heroin to informant Clark on May 20; they had reasonably trustworthy information that the Buckhanons frequently used female couriers to accompany them on their drug runs; they had been told by other agents that Arthur and Mrs. Sneed had boarded the plane together in Los Angeles; they knew that Arthur had been negotiating to sell heroin to Clark in Minneapolis; they saw Arthur and Mrs. Sneed make contact in the Minneapolis airport. In short, they had every reason to believe that either Arthur or Mrs. Sneed or both of them were in possession of a substantial quantity of heroin.

A case very similar to this one on its facts is United States v. Lugo-Baez, 412 F.2d 435, 437–439 (8th Cir. 1969), cert. denied, 397 U.S. 966, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970). In that case, too, all that the government agents knew was that Lugo-Baez was bringing heroin from Los Angeles to St. Louis on a certain flight and that he would be accompanied by a woman. Both were arrested upon arrival in St. Louis and the heroin was subsequently found by a policewoman in the companion's undergarments. This Court concluded that there was probable cause for the warrantless arrests of both Lugo-Baez and his female companion.

Based on the foregoing we conclude there was probable cause to arrest Mrs. Sneed.

It is argued, however, that even if Mrs. Sneed's arrest was proper, the agents should not have searched her suitcase without a warrant or her permission. We disagree. While the search of the luggage does not fall squarely within the search incident to arrest exception to the fourth amendment warrant requirement, we are convinced that this warrantless search was reasonable under the reasoning of United States v. Mehciz, 437 F.2d 145, 147 (9th Cir.), cert. denied, 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139 (1971).

■■ We agree with the rationale of *Mehciz* and hold that the warrantless search involved in this case was constitutionally permissible. Luggage and other personal effects which are in the immediate possession of an individual at the time of his valid arrest may be searched without a warrant immediately subsequent to the arrest if there is probable cause to believe that they contain contraband. *See* United States v. Ciotti, 469 F.2d 1204, 1206–1207 (3d Cir. 1972), vacated on other grounds, 414 U. S. 1151, 94 S.Ct. 907, 39 L.Ed.2d 105 (1974); United States v. Robbins, 424 F.2d 57, 58–59 (6th Cir. 1970), cert. denied, 402 U.S. 985, 91 S.Ct. 1674, 29 L. Ed.2d 151 (1971). *Cf.,* United States v. Soriano, 497 F.2d 147 (5th Cir. 1974) (en banc).

2. *Venue.*

Mrs. Buckhanon maintains that venue was not proper in Minnesota and that this violated provisions of Article III, Section 2 and the sixth amendment of the Constitution, which provide that criminal trials are to be held in the state and district in which the alleged crime was committed. This argument is predicated on the fact that the jury acquitted the defendant of the conspiracy count, so that venue cannot be based on the rule that in a conspiracy situation venue lies in any district in which an overt act in furtherance of that conspiracy occurred. Hyde v. United States, 225 U.S. 347, 367, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); United States v.

Phillips, 433 F.2d 1364, 1368 (8th Cir. 1970), cert. denied, 401 U.S. 917, 91 S.Ct. 900, 27 L.Ed.2d 819 (1971). It is also urged that venue was improper because the indictment alleged possession in Minnesota while the evidence showed that Mrs. Buckhanon was not in that state during the pertinent times.

■ While it is true that "venue, unless properly waived, is an essential part of the government's case in a criminal prosecution and must be established by adequate proof the burden of which is on the government," Holdridge v. United States, 282 F.2d 302, 305 (8th Cir. 1960) (footnote omitted), there is no merit to the defendant's argument here.

The government never claimed that Mrs. Buckhanon was physically present in Minnesota when Arthur was in the state in possession of heroin. Rather, the government's entire case was based on the theory that the defendant had aided and abetted Arthur in his illegal possession and was chargeable as a principal under 18 U.S.C. § 2(a). The jury was instructed on this theory.

■■ It is clear that an aider and abettor may be tried in the district in which the principal committed the substantive crime. United States v. Jackson, 482 F.2d 1167, 1178–1179 (10th Cir. 1973), cert. denied, 414 U.S. 1159, 94 S. Ct. 918, 39 L.Ed.2d 111 (1974); United States v. Kilpatrick, 458 F.2d 864, 868 (7th Cir. 1972); Hoss v. United States, 232 F. 328, 335 (8th Cir. 1916). There is no question but that Arthur was in the District of Minnesota when he was apprehended in the crime of possession of heroin. There was adequate proof that Katherine aided and abetted him in that possession. Therefore, venue was proper.

### 3. *Evidence of other criminal conduct.*

During the course of the trial some evidence was admitted, over objection, concerning other drug-related criminal conduct of Mrs. Buckhanon. Most of this evidence dealt with other incidents closely related in time to the two Minneapolis transactions in which various government witnesses had seen narcotic drugs in the Buckhanon household, had seen Katherine in possession of drugs, had heard Katherine discuss her activities relating to drugs or had been told by Arthur that he obtained narcotics from Katherine. Defendant claims that none of the exceptions to the rule against admission of evidence of past criminal conduct is applicable here because there was no genuine issue of identity, motive, intent, plan or absence of mistake or accident.

■ The trial court admitted this evidence on the theory that it went to establish the requisite intent. We do not agree that it was admissible for this purpose;[1] however, we are satisfied that there was an issue regarding the identity of the source of the heroin and that this evidence was proper to show a larger continuing plan or scheme and thus, indirectly, the identity of the culprit.

Professor McCormick points out that evidence of past criminal conduct is properly admitted

> [t]o prove the existence of a larger continuing plan, scheme, or conspiracy, of which the present crime on trial is a part. This will be relevant as showing motive, and hence the doing of the criminal act, *the identity of the actor*, and his intention, where any of these is in dispute.

C. McCormick, Law of Evidence § 190, at 448–49 (2d ed. 1972). (Emphasis supplied.)

---

1. The purpose of evidence bearing on intent is to negate an innocent mental state after the act charged has been established as having been done by the defendant. 2 J. Wigmore, Wigmore on Evidence § 304, at 202 (3d ed. 1940). In the instant case the defendant was seriously contesting that she had given the heorin to Arthur, but was willing to stipulate that if she committed the crime, she had the requisite criminal intent. Thus, intent was not seriously in issue, and the plea of not guilty did not make it an issue. *See* C. McCormick, Law of Evidence § 190, at 452 n. 54 (2d ed. 1972); United States v. Broadway, 477 F.2d 991, 994 (5th Cir. 1973).

In Sears v. United States, 490 F.2d 150, 152–153 (8th Cir. 1974), intent was not in issue because it was not an element of the crime. However, the court permitted the introduction of evidence of other similar criminal acts "to show knowledge, as well as a common criminal scheme or plan, in negation of the likelihood that the crime was committed as a result of inadvertence, accident or mistake." In this case Mrs. Buckhanon was actively disputing the identity of the individual who had given the heroin to Arthur. The government could introduce evidence of prior similar criminal conduct which showed the larger continuing plan whereby Mrs. Buckhanon obtained heroin from a source in Mexico and distributed it to various locations across the country.

### 4. Refusal to allow attorney to testify.

During its rebuttal the government put a witness named Barbara King on the stand. Mrs. King testified that she had been at Mrs. Buckhanon's home the night before Arthur's first drug run to Minneapolis and had seen Mrs. Buckhanon meet with Arthur, place a phone call and receive a package at the door.

The defense attorney sought to call himself as a witness to impeach Mrs. King's testimony by attempting to show bias. Out of the hearing of the jury the attorney made an offer of proof alleging that Mrs. King had requested $2,500 which Mrs. Buckhanon supposedly owed her in return for testifying favorably for the defendant. This "extortion" supposedly occurred during a telephone conversation between the attorney and Mrs. King to which there were no other witnesses.

The question of whether an attorney for one of the parties should be allowed to testify at the trial is one within the discretion of the trial judge. Gajewski v. United States, 321 F.2d 261, 268 (8th Cir. 1963), cert. denied, 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964). And while an attorney for a party is not incompetent to testify, United States v. Fiorillo, 376 F.2d 180, 185 (2d Cir. 1967), it is true that "[c]ourts are especially reluctant, and rightfully so, to allow lawyers . . . to be called as witnesses in trials in which they are advocates." Gajewski v. United States, supra, 321 F.2d at 268. We find no abuse of discretion in this case.

### 5. Admission of out-of-court declarations.

Defendant argues that certain hearsay statements made by Arthur to various witnesses and testified to by them should not have been admitted. These statements were, generally, damaging to Katherine's case, since they tended to show that she routinely supplied heroin to Arthur.

These hearsay statements were admitted because a conspiracy had been charged and there is, of course, an exception to the hearsay rule which allows out-of-court statements made by a co-conspirator during the progress of the conspiracy to be used against fellow conspirators. Dutton v. Evans, 400 U.S. 74, 81, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); Delaney v. United States, 263 U.S. 586, 590, 44 S.Ct. 206, 68 L.Ed. 462 (1924); Proposed Federal Rule of Evidence 801(d)(2)(E), H.R. 5463, 93d Cong., 2d Sess. 27 (1974). It is, in essence, not considered to be hearsay at all.

However, Mrs. Buckhanon claims that because the jury acquitted her of the conspiracy count, this rule should not have been applicable and that the alleged hearsay merely served to prejudice her case on the substantive counts. There is no merit to this claim.

This Court has held that declarations by a co-conspirator are not hearsay and are admissible even if a conspiracy has not been charged by the government, so long as there is independent evidence of concert of action. United States v. Richardson, 477 F.2d 1280, 1282–1283 (8th Cir.), cert. denied, 414 U.S. 843, 94 S.Ct. 104, 38 L.Ed.2d 82 (1973); United States v. Sanders, 463 F.2d 1086, 1088 (8th Cir. 1972); United States v. Schroeder, 433 F.2d 846, 849 (8th Cir. 1970), cert. denied, 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971)

and sub nom. Allen v. United States, 400 U.S. 1024, 91 S.Ct. 590, 27 L.Ed.2d 636 (1971). In the instant case there was, in fact, a conspiracy charged and independent evidence of concert of action. It follows that the out-of-court statements of others involved in the criminal plan were admissible.

6. *Sufficiency of the evidence.*

In reviewing the sufficiency of the evidence we are guided by the axiomatic principle that we must view the evidence in the light most favorable to the verdict. United States v. Gaskill, 491 F.2d 981, 982 (8th Cir. 1974). A complete review of all the evidence would serve no purpose here for we are convinced, as was the trial judge, that there was "overwhelming evidence of guilt."

We have examined each of the other assignments of error set forth by the appellant and have found them to be without merit. For the foregoing reasons the conviction of the appellant is affirmed.[2]

2. Mrs. Buckhanon has filed a Motion for New Trial based on newly discovered evidence under Fed.R.Crim.P. 33 with this Court. We deny the motion without prejudice to her right to reapply to the district court under the rule.