**UNITED STATES of America,
Appellee,**

v.

**Jerry Lee WILSON, Appellant.**

**No. 75–1247.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 9, 1975.

Decided Oct. 21, 1975.

Rehearing and Rehearing En Banc
Denied Nov. 13, 1975.
Certiorari Denied March 1, 1976.
See 96 S.Ct. 1415.

Philip M. Moomaw, Asst. Federal Public Defender, Springfield, Mo., for appellant.

David H. Jones, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before VOGEL, Senior Circuit Judge, HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The central issue on this appeal is whether the district court[1] erred in overruling appellant's motion to suppress the introduction into evidence at his trial of a sawed-off shotgun which was allegedly obtained as the result of an illegal search and seizure. We find that the search and seizure complained of in the instant case was not unreasonable. Accordingly, we affirm.

On the evening of August 7, 1974 at approximately 11:00 p. m. appellant Jerry Lee Wilson was involved in a traffic accident at an intersection in Springfield, Missouri. The motorcycle which Wilson was operating collided with an automobile. Wilson was thrown from his vehicle onto the street where he lay unconscious with serious physical injuries.

Shortly thereafter, Officer Dan Wilson of the Springfield Police Department arrived at the scene. Both prior to and after the arrival of the ambulance, Officer Wilson participated in administering first aid to appellant. At the request of the ambulance driver the officer took possession of the contents of the injured man's pants' pocket which had to be cut away to allow for the application of a splint. Among the items received by the officer were two small cellophane-

---

1. The Honorable William R. Collinson, United States District Judge for the Western District of Missouri.

wrapped packages of a white powdery substance which the officer judged to be a form of narcotic.

In the course of his subsequent investigation of the accident, Officer Wilson learned from a reliable source[2] that a duffel bag had been removed from the street where the collision had occurred and placed in a nearby parked automobile. The officer located the person who had taken the bag and was told by him that the bag belonged to appellant. Acting pursuant to an established policy of the Springfield Police Department regarding the custody of property belonging to accident victims, the officer requested that the bag be turned over to him for safekeeping. Upon receiving the bag[3] the officer immediately noticed that approximately six inches of what appeared to be a shotgun barrel was protruding from the bag. There was no sight on the end of the barrel. The barrel end was shiny and appeared to have been sawed off. No immediate assessment of the precise barrel length was made. The overall length of the duffel bag was approximately three feet. At the time it was taken into police custody the bag was locked with a padlock. As a result, the gun could not be removed from the bag.

The duffel bag and the items taken from appellant's pockets were subsequently turned over to Officer Asher and locked in his patrol car. Officer Asher, the accident investigator, arrived on the scene as appellant was being loaded into an ambulance. Upon leaving the scene Asher went directly to the hospital and from there to the police station where he then opened the duffel bag. This was at about 1:30 a. m., approximately two hours after Asher had received custody of the bag at the scene of the accident. No search warrant was obtained prior to cutting off the padlock

and examining the bag's contents. At that time appellant Wilson had not been arrested. The officer testified that he opened the bag because he believed that it contained a sawed-off shotgun and because he was concerned over the possibility that additional drugs were located therein. No search warrant was obtained because the officer felt that it was unnecessary under the circumstances of the case.

Upon opening the bag the police discovered, among other things, a sawed-off shotgun with a barrel less than 18 inches in length. Subsequent checking revealed that the gun was not registered as required by federal statute. Appellant Wilson was subsequently arrested and charged with violating 26 U.S.C. § 5861(d). Prior to his trial he moved for the suppression of the shotgun on the theory that it was obtained as a result of an illegal search and seizure. His motion was overruled by the district court. After his jury trial and conviction, the trial court committed Wilson for a study pursuant to 18 U.S.C. § 4208(b), final sentence to be imposed upon completion of that study and with the recommendation of the Director of the Bureau of Prisons. This appeal followed.

Two issues are raised on this appeal. Appellant's primary complaint is that the search and seizure of the sawed-off shotgun contained in the padlocked duffel bag was constitutionally invalid and thus the trial court erred in overruling his motion to suppress the receipt of the gun into evidence. We disagree and hold that, under the totality of the circumstances in the instant case, the process through which the police obtained the sawed-off shotgun was not an unreasonable search and seizure in violation of the fourth amendment.

---

2. Identified by Officer Wilson as Wayne McSwain, a special agent for the Frisco Railroad who happened to be at the scene of the accident.

3. The record is unclear as to whether Officer Wilson himself retrieved the duffel bag from

the back seat of the automobile or whether it was handed to him by the apparent owner of the car, a Mrs. Bender, or by her companion Clifford Gardner, an acquaintance of appellant.

██ It is well established that warrantless searches and seizures are valid under certain exceptional circumstances. *See, e. g., United States v. Edwards,* 415 U.S. 800, 802, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *Coolidge v. New Hampshire,* 403 U.S. 443, 453–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In the instant case the trial court ruled that the warrantless seizure of the sawed-off shotgun fell within the plain view exception to the warrant requirement as articulated in *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). In *Harris* the Court explained that:

> It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.

390 U.S. at 236, 88 S.Ct. at 993. *See also United States v. Story,* 463 F.2d 326, 327–28 (8th Cir.), *cert. denied,* 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254 (1972). A plain view observation is not a search within the meaning of the fourth amendment and thus is not subject to the restrictions attendant to the constitutional provision. *United States v. Johnson,* 506 F.2d 674, 675 (8th Cir. 1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1579, 43 L.Ed.2d 784 (1975). In order to qualify for inclusion within the plain view exception it must be shown (1) that the initial intrusion which afforded the authorities the "plain view" was lawful; (2) that the discovery of the evidence was inadvertent, and (3) that the incriminating nature of the evidence was "immediately apparent." *United States v. Williams,* 523 F.2d 64, (8th Cir., 1975). We believe that the facts in the instant case satisfy these tests.

The initial intrusion in the instant case was the act of taking appellant Wilson's possessions into police custody following the accident. It was this effort that brought the protruding shotgun barrel into the plain view of Officer Wilson at the moment that he first received custody of the bag. According to the testimony at trial it was an established police procedure to take custody of an incapacitated accident victim's possessions. While this fact does not immunize the custodial procedures from scrutiny for all purposes, *United States v. Lawson,* 487 F.2d 468, 474–77 (8th Cir. 1973), we believe that the limited "intrusion" in the present case was a reasonable measure and lawfully placed the police in the position from which they viewed the sawed-off barrel of the shotgun.

██ Second, it appears from the record that the discovery of the sawed-off shotgun was inadvertent. While the revelation of the two cellophane-wrapped packets from Wilson's pocket no doubt heightened police suspicion regarding Wilson's activities there is no evidence to suggest that they were aware of the shotgun's existence when they attempted to recover the injured man's property at the accident scene. Thus we do not feel that the "plain view" of the shotgun barrel was tainted by any prior knowledge of the gun. *Cf. Coolidge v. New Hampshire,* 403 U.S. 443, 469–71, 91 S.Ct. 2022 (1971).

██ Finally, we are convinced that the incriminating nature of the evidence seized was immediately apparent here. Despite the fact that the entire gun was not in plain view, the officers testified that they were able to see approximately six inches of a gun barrel which had no sight but that had a shiny end as if it had been sawed off. This was sufficient to justify the warrantless seizure of the duffel bag and the removal of the shotgun from it. It was not necessary for the police officers to know beyond a reasonable doubt that the gun whose barrel protruded from the bag was an illegal sawed-off shotgun. Rather the seizure was proper if the officers had reasonable cause to believe that the article was contraband. Here the record reveals facts which gave the officers probable cause to believe that an illegal sawed-off shotgun was contained within the duffel bag. *United States v. Story,* 463 F.2d 326, 328 (8th Cir.), *cert. denied,* 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254 (1972); *United States v. Cecil,* 457 F.2d 1178, 1180 (8th

Cir. 1972). *See also United States v. Sedillo,* 496 F.2d 151, 153 (9th Cir.) (Hufstedler, J., dissenting), *cert. denied,* 419 U.S. 947, 95 S.Ct. 211, 42 L.Ed.2d 168 (1974).

■ Thus we hold that the seizure of the shotgun here was not in violation of appellant Wilson's fourth amendment rights. We place no significance on the fact that the padlock on the duffel bag had to be removed before the shotgun could be fully examined.[4] As noted above, the protruding barrel provided the police with good reason to believe that an illegal shotgun was contained in the bag which was lawfully within police custody. Cutting the padlock to free the gun was no more an unlawful intrusion than reaching inside an automobile to seize a gun visible from the outside. *See United States v. Cecil,* 457 F.2d 1178, 1180 (8th Cir. 1972). The police in this case were merely carrying out the seizure which the "plain view" doctrine authorized.

■ In addition to the fact that the seizure of the sawed-off shotgun was valid under the "plain view" doctrine, recent Supreme Court decisions suggest that if sufficient probable cause existed to conduct a warrantless search of the duffel bag at the scene of the accident, it was not lost when the duffel bag was taken back to the police station. *See Cardwell v. Lewis,* 417 U.S. 583, 593–96, 94 S.Ct. 2464, 41 L.Ed.2d 325, (1974); *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). A current line of cases indicates that the special rationales developed by the Supreme Court in the automobile search area are equally applicable to other movable items such as the duffel bag involved

here. *See United States v. Buckhanon,* 505 F.2d 1079, 1082 (8th Cir. 1974);[5] *United States v. Johnson,* 467 F.2d 630, 639 (2d Cir. 1972), *cert. denied,* 413 U.S. 920, 93 S.Ct. 3069, 37 L.Ed.2d 1042 (1973); *United States v. Mehciz,* 437 F.2d 145, 147 (9th Cir.), *cert. denied,* 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139 (1971). *See generally,* Note, *Mobility Reconsidered: Extending the Carroll Doctrine to Movable Items,* 58 Iowa L.Rev. 1134 (1973). The search of Wilson's duffel bag was based upon overwhelming probable cause lawfully acquired at the scene of the accident. This probable cause to search was not forfeited through the passage of time or by the mere fact that the police chose to wait to open the bag and remove the sawed-off shotgun in plain view until they had returned to the police station. This search and seizure was no less reasonable an intrusion than was recently held valid by the Supreme Court in *Cardwell v. Lewis, supra,* 417 U.S. at 593–96, 94 S.Ct. 2464.

■ The second issue raised by appellant concerns the display of the sawed-off shotgun on counsel table in full view of the jury panel during the jury selection process, prior to its admission into evidence. An objection was made at the time to the court in chambers. The objection was overruled but the court noted that if the shotgun was not admitted into evidence when offered, the case would have to be dismissed. Appellant now contends that the display of the weapon was so prejudicial as to render the trial court's ruling erroneous. We disagree. The fact that the gun was subsequently received into evidence and examined by each member of the jury dispels any claim of prejudice. We have

---

4. Despite appellant's contentions to the contrary, this is not a case like *United States v. Lawson,* 487 F.2d 468 (8th Cir. 1973) in which the police justified a general search of a locked trunk on the basis of a police inventory policy. Here, unlike *Lawson,* the evidence sought to be suppressed was in plain view of the police without the necessity of a search.

5. We recognize that the *Buckhanon* case involved the application of the "search incident to arrest" exception to the warrant requirement. 505 F.2d at 1082. While no arrest occurred prior to the search in the instant case we note that the probable cause which preceded the search would probably have been a sufficient basis upon which to arrest Wilson but for the fact that he was unconscious as a result of the accident.

no doubt that the verdict was not substantially influenced in any way by the display of the weapon. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1945).

Affirmed.

HEANEY, Circuit Judge (dissenting).

I respectfully dissent. The majority's holding that Officer Asher did not "search" the appellant's locked duffel bag and that the weapon was in "plain view" eviscerates the plain meaning of those words under the Fourth Amendment. The test is constitutional; it does not turn on a judge's view of reasonable police practices. *United States v. Lawson,* 487 F.2d 468, 475 (8th Cir. 1973).

A warrantless search, irrespective of the existence of probable cause, is *per se* unreasonable except for a few well-delineated exceptions. *Coolidge v. New Hampshire,* 403 U.S. 443, 468, 91 S.Ct. 2022 (1971); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. .507, 19 L.Ed.2d 576 (1967). Moreover, the fact that evidence is in plain view at the time of its seizure by the police has no independent legal significance.

 \* \* \* The problem with the "plain view" doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal.

*Coolidge v. New Hampshire, supra* at 465, 91 S.Ct. at 2037.

The police properly took possession of the duffel bag following the accident. The protrusion of the weapon's barrel was sufficient, under decisions of this Court, to provide the officers with probable cause to believe the appellant guilty of violating 26 U.S.C. § 5861(d).[1] It was not justification for breaking into the bag.

 The limits on the doctrine are implicit in the statement of its rationale. The first of these is that plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." \* \* \*

*Coolidge v. New Hampshire, supra* at 468, 91 S.Ct. at 2039 (emphasis included).

Moreover, mere custodial possession is not an exception to the warrant requirement justifying an intrusion greater than that necessary to the performance of the officer's caretaking duties. *See Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325, 336 n.8 (1974); *Preston v. United States,* 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *United States v. Lawson, supra* at 471–472. Yet, that is the only justification offered to uphold the search and seizure of the weapon here.[2] This was not an inventory search;[3] the appellant was

---

**1.** I continue to adhere to the view that
 \* \* \* police [do not] have probable cause to arrest anyone found in possession of a sawed-off shotgun in the absence of probable cause to believe [the weapon] is unregistered. \* \* \*
*United States v. Cecil,* 457 F.2d 1178, 1181 (8th Cir. 1972) (dissenting opinion) (citation omitted).
 There was no showing here that the officers had reason to believe the weapon was not registered to the appellant.

**2.** The observation of Judge Aldrich in *United States v.. Church,* 490 F.2d 353, 356 (9th Cir. 1973), *cert. denied,* 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974), is well taken:
 \* \* \* Where the burden of obtaining a warrant can be readily met, officers should

exercise forethought rather than claim they are blameworthy only by hindsight.

**3.** In deciding whether an inventory search was necessary and reasonable, we quoted with approval from *Mozzetti v. Superior Court,* 4 Cal.3d 699, 94 Cal.Rptr. 412, at 417, 484 P.2d 84, at 89:
 This contention is rebutted by recognition of the vehicle owner's countervailing interest in maintaining the privacy of his personal effects and preventing anyone, including the police, from searching suitcases, and other closed containers and areas in his automobile at the time the police lawfully remove it to storage. In weighing the necessity of the inventory search as protection of the owner's property against the owner's rights under the Fourth Amendment, we observe that

˝not under arrest; and there was no possibility that the duffel bag would be carried away before the officers could obtain a warrant.

The majority's reliance on the automobile cases is also in error. None hold that probable cause alone is sufficient to justify a warrantless search.

In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. * * *

*Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981 (1970).

items of value left in an automobile to be stored by the police may be adequately protected merely by rolling up the windows, locking the vehicle doors and returning the keys to the owner. The owner himself, if required to leave his car temporarily, could do no more to protect his property. *United States v. Lawson,* 487 F.2d 468, 476 (8th Cir. 1973).