**Clinton C. SHORT, a/k/a Calvin C. Short, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10347.**

District of Columbia Court of Appeals.

Argued Sept. 15, 1976.

Decided Dec. 8, 1976.

---

N. David Povich, Washington, D. C., with whom Robert P. Watkins, Washington, D. C., was on the brief, for appellant.

Douglas J. Behr, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and Joseph F. McSorley, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. Stephen R. Spivack, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before KELLY, Associate Judge, REILLY, Chief Judge, Retired, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

This appeal from an order revoking probation raises a question as to whether the immunity given the probationer in exchange for his testimony in a criminal case is broad enough to shield him from the consequences of future related criminal conduct.

On November 20, 1972, appellant pleaded guilty to operating a lottery[1] and was, on February 23, 1973, sentenced to a fine of $1,000 and imprisonment for a term of three months to three years. Execution of the sentence, insofar as it imposed the term of imprisonment, was suspended and appellant was placed on probation for thirty months.

Given reason to believe that appellant may have violated the terms of his probation, the United States Attorney on July 8, 1974, and again on May 23, 1975, moved in the Criminal Division of the Superior Court to revoke the probation. To this end hearings were held in August, November, and December 1975.

The evidence adduced at the hearings disclosed a sequence of rather bizarre circumstances and events. What the trial court found from this evidence, as a basis for its disposition of the motions, is substantially as follows. After the imposition of sentence a Special Assistant United States Attorney bargained with appellant to obtain his assistance and cooperation in the investigation of alleged police corruption in the District of Columbia and the prosecution of the persons involved. Appellant agreed and in return was promised that his testimony "would not be used against him . . . nor would the fruits [of such testimony] . . . be used against him" in any prosecution for crime.

A short time before his scheduled testimony in the United States District Court for the District of Columbia, appellant, then residing in Prince George's County, Maryland, was kidnapped.[2] He later escaped and in October 1973, testified for the government in the police corruption case.

Based on information furnished by appellant, his kidnappers were apprehended and in January 1974, they were brought to trial in the Prince George's County Circuit Court. Subpoenaed as a witness for the prosecution, appellant testified as to the

---

1. D.C.Code 1973, § 22–1501.

2. It appears that appellant was kidnapped either for the purpose of extortion in connection with his gambling activity or pursuant to a "contract" to prevent him from testifying for the government in the police corruption case.

facts and circumstances surrounding the kidnapping and his activities as a "numbers backer" which provoked it. In the latter connection he said that he had been in the "numbers business" for about ten years, that the $30,000 which he offered the kidnappers to obtain his release was his money obtained through "numbers operations" and that he possessed a 9 mm. gun for his own protection. There was testimony to the same effect by another witness who was identified as appellant's chief lieutenant in the "numbers business." [3]

There was also testimony that on March 28, 1975, appellant was found in his home in Prince George's County, Maryland, suffering from a gunshot wound in his upper left thigh. Upon investigation by a county police officer, he was informed by a woman who identified herself as appellant's wife that appellant had accidentally shot himself with a .22 caliber pistol kept in the home for protection. It was developed later at the hearing that the woman who identified herself as appellant's wife was, in fact, his girlfriend; that it was she who possessed the .22 caliber pistol; and that it was she who shot appellant.

The trial court concluded from all of this that there had been substantial violations of appellant's probation in that he (1) continued to engage in illegal gambling activity, (2) possessed a 9 mm. gun during the period of his probation, and (3) made a false report to the Prince George's County Police Officer concerning his gunshot wound.

The court thereupon entered an order and judgment revoking appellant's probation. This appeal followed.

Urging reversal, appellant makes a number of contentions. Claiming that he was denied due process of law in the revocation proceedings, he says that he was not given notice that possession of the 9 mm. gun and making a false statement to the police would be used as grounds for revocation. He claims also that the introduction of the transcript of his testimony in the kidnapping case violated his Fifth Amendment privilege against self-incrimination.[4]

■ These contentions are without merit. In the first place, the August 20, 1975 affidavit of the Assistant United States Attorney filed as a supplement to the motion to revoke probation clearly put appellant on notice that the government considered his possession of the 9 mm. gun a probation violation. It is true, of course, that appellant was not given notice that the government would rely on the false statement given the Prince George's County Police, but the simple fact is that notice was not required. Appellant's defense to the charge that he possessed a .22 caliber pistol raised that issue. It should have been apparent to appellant that when he changed his story and identified his girlfriend as the owner of the .22 caliber pistol and as the one who shot him, he would leave himself vulnerable to the misdemeanor charge of lying to police officers during an investigation.

■ Appellant's claim that his Fifth Amendment privilege against self-incrimination was violated when the transcript of his testimony in the kidnapping case was received in evidence in the revocation proceedings is ill-founded. Appellant appeared as a prosecution witness in the kidnapping case in obedience to a subpoena and not as a defendant. Thus, the trial judge owed appellant no duty to warn him of his right to remain silent.[5] Put another

3. The transcript of the kidnapping trial was received in evidence in the revocation proceedings over appellant's objection.

4. U.S.Const. amend. V.

5. See United States v. Cecil, 457 F.2d 1178 (8th Cir. 1972); Hale v. United States, 406 F.2d 476 (10th Cir. 1969); Mullinix v. Mullinix, 12 Md.App. 402, 278 A.2d 674, 682 (1971); Adams v. State, 200 Md. 133, 88

way, when appellant, without asserting his privilege against self-incrimination, testified voluntarily that he was in the "numbers" business and that he possessed a 9 mm. gun, he waived his Fifth Amendment privilege.[6] His admissions were, therefore, properly received and considered at thc revocation hearings.[7]

Appellant says also that the use of the testimony he had given in the kidnapping case was inconsistent with the grant of immunity given him for his cooperation and testimony in the police corruption case. On its face, however, it appears that the promise of immunity for his testimony in the police corruption case went only to any subsequent criminal prosecution of him in the District of Columbia based upon anything contained in such testimony. The Special Assistant United States Attorney denied giving, or representing that he had the authority to give, appellant immunity from prosecution for testimony at the trial of the kidnappers who had not, at that time, been apprehended. Certainly, the immunity given appellant did not confer upon him, as a convicted felon, a license to possess and carry a gun.

But even if the grant of immunity did somehow cover appellant's testimony in the kidnapping case, such immunity would not bar the use of the testimony in the probation revocation proceedings. It is settled law that the immunity granted need only be coextensive with the scope of appellant's Fifth Amendment privilege against self-incrimination. *Kastigar v. United States*, 406 U.S. 441, 449 (1972). The Fifth Amendment states that "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." The cases dealing with the scope of the Fifth Amendment privilege have established that to compel someone to testify, immunity must be given barring the use of that testimony in subsequent criminal prosecutions. *E. g., Lefkowitz v. Turley*, 414 U.S. 70, 78, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Kastigar v. United States, supra*; Annot., 32 L.Ed.2d 869 (1973); Annot., 53 A.L.R.2d 1030 (1957). A probation revocation proceeding is not a criminal prosecution; rather, it is more in the nature of an administrative hearing intimately concerned with the probationer's rehabilitation. *Gagnon v. Scarpelli*, 411 U.S. 778, 782–85, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *United States v. Johnson*, 455 F.2d 932, 933 (5th Cir. 1972); *Hyser v. Reed*, 115 U.S.App.D.C. 254, 267, 318 F.2d 225, 238 (1963); Annot., 36 L.Ed.2d 1077, 1102 (1974). Thus, while the grant of immunity would bar the use of appellant's testimony against him in a subsequent prosecution for a crime, such immunity would not prevent its use against him in a probation revocation hearing.[8]

A probation revocation proceeding is not, of course, a formal trial.[9] Thus, any revocation of probation is within the discretion of the trial court when the probationer

A.2d 556 (1952); C. McCormick, Evidence § 137 at 290–91 (2d ed. 1972); 3 F. Wharton, Criminal Evidence § 722 (12th ed. R. Anderson 1955); Annot., 5 A.L.R.2d 1404, 1413–23 (1949).

6. *Garner v. United States*, 424 U.S. 648, 96 S.Ct. 1178, 1181–83, 47 L.Ed.2d 370 (1976); *United States v. Cecil, supra* at 1181; *Ayres v. United States*, 193 F.2d 739, 740–41 (5th Cir. 1952).

7. *Hale v. United States, supra* note 5.

8. *Cf. Katz v. United States*, 389 U.S. 347, 349 n. 3, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (immunity is granted to protect against self-incrimination in future prosecution, not to confer immunity from punishment pursuant to a prior prosecution and adjudication of guilt); *Reina v. United States*, 364 U.S. 507, 513–14, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960).

9. *United States v. Bryant*, 431 F.2d 425, 426 (5th Cir. 1970); *United States v. Cates*, 402 F.2d 473, 474 (4th Cir. 1968); *Worcester v. Commissioner of Internal Revenue*, 370 F.2d 713, 717 (1st Cir. 1966). *See Hyser v. Reed, supra.*

. . . commit[s] offenses of such nature as to demonstrate to the court that he is unworthy of probation and that the granting of same would not be in subservience of the ends of justice and the best interest of the public, or the [probationer] . . . .[10]

We conclude that the trial court did not abuse its discretion in revoking appellant's probation based on his admissions that he had unlawfully carried a 9 mm. pistol, engaged in gambling activities during his probationary period, and made a false statement to the Prince George's County Police during an investigation.

Accordingly, the order revoking appellant's probation is

*Affirmed.*

---

10. *Wright v. United States*, D.C.App., 315 A.2d 839, 841 (1974); *United States v. Bryant*, *supra*; D.C.Code 1973, § 24-104.