UNITED STATES of America, Appellee,

v.

Rudolph GARCIA, Appellant.

No. 78–1337.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 24, 1978.

Decided Feb. 20, 1979.

Rehearing Denied March 23, 1979.

78

Mark W. Peterson, Minneapolis, Minn., for appellant.

James A. Morrow, Asst. U. S. Atty., Minneapolis, Minn. for appellee; Andrew W. Danielson, U. S. Atty., Daniel M. Scott, Asst. U. S. Atty., and Anne Peek, Legal Intern, Minneapolis, Minn., on brief.

Before LAY, HEANEY and BRIGHT, Circuit Judges.

LAY, Circuit Judge.

Rudolph Garcia appeals from his conviction of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He contends that evidence which was seized at the time of his arrest should have been suppressed because his arrest was without probable cause or, in the alternative, because the search following his arrest was made pursuant to a search warrant which was issued on the basis of an affidavit which contained intentional, or reckless, misstatements which were material to the establishment of probable cause. We affirm.

A preliminary hearing was held on July 19, 1977. At that hearing Agent Gregory Hopps of the Minnesota Bureau of Criminal Apprehension testified that he received a tip from a confidential informant that Barry Lee Brashear, a white male, would be arriving at approximately 11:00 P.M. on July 12, 1977, at the Minneapolis-St. Paul International Airport on a flight from Houston, Texas. A physical description of Brashear was supplied by the informant. The informant also stated that Brashear would possibly be accompanied by another male. No description of this male was given.

Agent Hopps, and other narcotics agents, stationed themselves at the Minneapolis-St. Paul International Airport at the appointed time. At approximately 11:00 P.M., he observed two white males exiting from the blue concourse, where passengers from a Braniff flight from Houston, as well as other flights, had disembarked. One of the males, later identified to be Barry Lee Brashear, fit the description which Hopps had been given. The other male was later identified to be Garcia. Two females approached the men, and one embraced Brashear. The four then walked to the first floor of the airport to the Braniff baggage carousel. Hopps testified that another agent observed Brashear pick up a white piece of luggage from the carousel and Garcia pick up a brown piece of baggage. During this time, neither man exhibited any furtive, evasive or suspicious behavior.

After picking up the luggage, the four individuals walked back to the main floor of the terminal, through an unmarked door, and into a Northwest Orient Airlines crew lounge. This lounge is not marked as a restricted area. At that point, Agent Hopps and other surveillance agents arrested Brashear and Garcia, and asked them for identification. The two suitcases which Garcia and Brashear were carrying, as well as shoulder bags which they wore, were seized. Garcia and Brashear were detained until search warrants were obtained and a search of their luggage executed.[1] Three ounces of cocaine were found in Garcia's suitcase; an address book containing Brashear's name and phone number was found in his shoulder bag.

The affidavit which Hopps submitted in support of the search warrant contained additional information which was not included in his testimony at the preliminary hearing. In his affidavit, Hopps stated that Brashear, whose physical description and criminal record were corroborated prior to the airport surveillance, "would be" accompanied by a male named "Rudy;" that "Brashear and Rudy would be" in possession of cocaine; and that Brashear and Rudy would be met at the airport by a white female named Janice Nelson. According to Hopps' affidavit, the tip also contained a physical description of Janice Nelson, and this description matched one of the white females who met Garcia and Brashear. Hopps also stated that he heard the other female address the described female as Janice, and that this latter female, later identified as Janice Nelson was the one who embraced Brashear. The affidavit also contains a lengthy recitation of accurate information which the informant had previously given on other occasions.

The government and defense counsel stipulated in the district court that the court should consider the facts set forth in the preliminary hearing as well as the facts set forth in Hopps' affidavit. In doing so Mr. Peterson, counsel for the defendant, stated to the court:

Well, I guess the Court could assume that if Agent Hopps' were called to testify he probably would parrot his affidavit, but his testimony at the preliminary hearing, in some areas, is inconsistent with the facts which have been set forth in his affidavit.

Garcia now contends on appeal (1) that the officer did not have sufficient facts to constitute probable cause for Garcia's arrest; and alternatively, (2) that the affidavit in support of the warrant contained intentional, or at least reckless, misrepresentations which were material to the establishment of probable cause. We reject both arguments.

The information given to Agent Hopps by the reliable informant was sufficiently verified by Hopps and was further corroborated by the actions of Brashear and Garcia. Under the circumstances we conclude, as did the trial court, that the officers possessed probable cause to justify the arrest. *Cf. United States v. Buckhanon,* 505 F.2d 1079 (8th Cir. 1974).

It is true that the testimony of the officers at the preliminary hearing does not go into detail as to the underlying facts leading to the arrest.[2] However, the affidavit amplifies those facts. This in itself does not prove, as the defense assumes, that the additional facts within the affidavit were reckless misrepresentations. The defendant stipulated that Agent Hopps would testify that the facts within the affidavit were the facts upon which he acted to make the arrest. If this is so, it remained incumbent on the defendant to prove that these facts were misrepresented. In discussing a

---

1. During oral argument, counsel for the Government stated that the arrest was made at approximately 11:00 P.M., and the search warrant was obtained four hours later.

2. The objection by the Government to questions concerning the arrest and search were properly sustained by the magistrate at the preliminary hearing. Rule 5.1(a), Fed.R. Crim.P., which governs the conduct of the preliminary hearing, states that objections to unlawful searches are not relevant at the preliminary hearing.

defendant's burden in a similar situation the Court's observations in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) are appropriate here:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Id.* at 2685.

Clearly, Garcia has the burden to establish the falsehood of the affidavit. He has not done so on the present record.

The judgment of conviction is affirmed.

HEANEY, Circuit Judge, dissenting.

The question before us is whether, at the time of Garcia's arrest, the arresting agents had knowledge of sufficient facts and circumstances to give them probable cause to believe that Garcia had committed, or was committing, a violation of the narcotics laws. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *United States v. Scott,* 545 F.2d 38, 39 (8th Cir. 1976), *cert. denied,* 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977). If the arresting agents lacked such knowledge, all evidence which was obtained as the fruit of that illegal arrest must be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Draper v. United States,* 358 U.S. 307, 310–311, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

If the content of the informer's tip is determined on the basis of Hopps' testimony at the preliminary hearing, it is clear that the agents lacked sufficient information to justify Garcia's arrest. The tip, as stated in Hopps' testimony, contained only an allegation that Brashear would be carrying cocaine, and that Brashear "would possibly" be accompanied by another male. There was no allegation that Brashear's possible traveling companion would be committing a violation of the narcotics laws. The tip also contained no detailed information pertaining to this possible companion which would support an inference that Garcia was involved in criminal activity. *Compare Draper v. United States, supra* at 312–313, 79 S.Ct. 329. Mere presence at a criminal rendezvous in a public place, where the alleged substantive crime is one which does not necessarily involve any act visibly criminal, does not supply probable cause for arrest. *See United States v. Di Re,* 332 U.S. 581, 593, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *United States v. Barber,* 557 F.2d 628, 632 (8th Cir. 1977). Police corroboration of the details of the tip also failed to establish probable cause for Garcia's arrest. If information received from an informant suggests no basis for the conclusion that an individual is involved in criminal activity, police corroboration of the accuracy of that information will not suggest such involvement either. *See Whiteley v. Warden,* 401 U.S. 560, 567, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1970); *DeAngelo v. Yeager,* 490 F.2d 1012, 1014 (3d Cir. 1973). Nor were any facts gathered by independent police investigation, such as furtive or evasive conduct by Garcia, which, considered with the tip, would have given the agents probable cause for his arrest.

If, on the other hand, the content of the tip is taken to be what appears in Hopps' affidavit, the question is much closer since the tip, as set forth therein, specified that Brashear "would be" accompanied by a male named "Rudy," and, most critically, that "Brashear *and Rudy* would be" in pos-

session of cocaine (emphasis supplied). The legality of Garcia's arrest, therefore, hinges on which version of the informant's tip is used—the version stated in the officer's testimony at the preliminary hearing or the version appearing in his affidavit.

The majority holds that since, under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a search warrant affidavit is presumed to be truthful until proven otherwise, we must assume that the version of the informant's tip, which appears in the affidavit, is the correct one and, thus, the arresting agents had probable cause for Garcia's arrest.[1] I disagree. *Franks* dealt only with the circumstances under which a defendant may attack a search executed pursuant to a facially valid warrant on the grounds that the affidavit submitted in support of the warrant was perjured. That case did not address the situation with which we are now faced, namely, whether an officer's sworn testimony, or his sworn statements made in support of an after-acquired search war-

rant, should be taken by this Court as the correct statement of his knowledge at the time of the arrest.

I believe that the content of the informant's tip must be determined on the basis of the testimony which was adduced at the preliminary hearing. In order to legally arrest and detain, the government must prove the existence of probable cause to believe that the arrestee has committed a crime. *See United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Giordenello v. United States,* 357 U.S. 480, 485–486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). The government was aware, when it chose to submit the issue of probable cause for Garcia's arrest on the preliminary hearing record, that the version of the informant's tip, which appeared therein, was different than that which appeared in the search warrant affidavit which were sworn out some four hours after the arrest. The government merely submitted the affidavit as an exhibit, however, with no attempt to resolve the discrepancy.[2] We can-

---

1. The majority also implies that Garcia's counsel stipulated that Hopps possessed the facts stated in the affidavit at the time of Garcia's arrest. I find this implication to be unsupported by the record. Although the affidavit was submitted by the government as an exhibit, and to that extent was before the court for its consideration, I do not find any support in the record for the conclusion that the defense counsel conceded that the affidavit, rather than the preliminary hearing testimony, more accurately reflected the informant's tip. Pertinent parts of the record state as follows:

> MR. PETERSON [Garcia's counsel]: The only comment that I would make, your Honor, is that Mr. Scott in his brief, I believe he equates the question of probable cause for issuance of the warrant with the question of probable cause for Mr. Garcia's detention which was an arrest under the circumstances of this case. * * * I do not see the issues as being the same. You don't even get to the issue of the warrant if the Court decides that Mr. Garcia's arrest and concommitant detention of his luggage was illegal.
> *   *   *   *   *   *
> THE COURT: Is your view that the probable cause for arrest is something different than the probable cause for the search?
> MR. PETERSON: Under the circumstances of this case it is, because subsequent to the time of arrest, and as reflected in the affidavit which was prepared in support of the

search warrant, there were additional facts * * *.
> *   *   *   *   *   *
> THE COURT: Well, can't I assume that the arresting officer had the information contained in the affidavit for the search warrant up to the point where it recites that they stopped them?
> MR. PETERSON: Well, I guess the Court could assume that if Agent Hopps were called to testify he probably would parrot his affidavit, *but his testimony at the preliminary hearing, in some areas, is inconsistent with the facts which have been set forth in his affidavit.*
> THE COURT: You point that out in your brief.

Transcript for Hearing on Motion to Suppress, held on February 15, 1978, at pp. 4–6 (emphasis added).

2. Indeed, the government objected whenever Garcia's counsel attempted, during the preliminary hearing, to ascertain exactly what knowledge Hopps possessed at the time of Garcia's arrest, and the objections were sustained:

> Q [Garcia's counsel]: I take it that prior to the time of arresting Mr. Garcia, you had no previous information nor description of him, is that correct?
> MR. SCOTT [Counsel for the government]: Objection, your Honor. That's privileged, and its also not relevant.to direct, your Honor.

not speculate as to what information Hopps may have had beyond that reflected by his testimony at the preliminary hearing, or why the government failed to introduce testimony, either at the preliminary hearing or at the hearings on the motion to suppress, which would have substantiated Hopps' affidavit. *Cf. Sibron v. New York,* 392 U.S. 40, 45–46, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (sworn complaint bore little resemblance to officer's testimony at suppression hearings; testimony at suppression hearing deemed controlling). It was incumbent upon the government to establish precisely what information the arresting agents had at the time of Garcia's arrest and that the information so possessed constituted probable cause. The government cannot, in my view, relieve itself of this burden by the mere submission of a conflicting affidavit.

Since the informant's tip, as reflected by the preliminary hearing record, failed to establish probable cause for Garcia's arrest, any evidence which was found in the subsequent search of Garcia's luggage should be suppressed. *See United States v. Barber, supra* at 632–633; *United States v. Hellman,* 556 F.2d 442, 444 (9th Cir. 1977); *United States v. Stoner,* 487 F.2d 651, 653 (6th Cir. 1973).

THE MAGISTRATE: I will sustain the objection.

\* \* \* \* \* \*

Q [Garcia's counsel]: What was the basis of your arrest of Mr. Garcia, simply the fact that he was with Mr. Brashear?

MR. SCOTT [Counsel for the government]: Objection. It's not relevant, your Honor.

THE MAGISTRATE: Sustained.

Transcript of the Preliminary Hearing, held on July 19, 1977, at pp. 27, 30.

As the majority correctly points out, objections to unlawful searches are generally not relevant at a preliminary hearing. *See* Fed.R. Crim.P. 5.1(a). The government stipulated, however, that the record made at the preliminary hearing, and the two search warrants which were submitted as exhibits, would provide a sufficient basis for the court's ruling on Garcia's motion. To the extent that the government now considers the transcript of the preliminary hearing to be insufficient, it has only itself to blame.